PEOPLE *v.* WOLFE.

1. ARREST—WITHOUT WARRANT—VALIDITY.
   It is the function of the court to determine whether the facts
   available to the officers at the moment of the arrest would
   justify "a man of reasonable caution in the belief" that an
   offense has been committed, in order to determine whether
   there has been a valid arrest without a warrant.

2. SAME—WITHOUT WARRANT—STATUTES.
   Statutes in this State permit an arrest without a warrant under
   a variety of circumstances (CL 1948, § 764.15).

3. SAME—WITHOUT WARRANT—OFFICERS—BELIEF—SUSPICION.
   An officer must reasonably *believe* and not merely *suspect* that
   the person arrested has committed a felony before the officer
   may make an arrest without a warrant.

4. SAME—WITHOUT WARRANT—OFFICERS—FELONY—REASONABLE BE-
   LIEF.
   A court must later determine whether an officer's belief that an
   offense had been committed was reasonable under the circum-
   stances, where an officer has made an arrest without a warrant
   on the belief that the person arrested had committed a felony.

5. SAME—WITHOUT WARRANT—SUBTERFUGE—SEARCH AND SEIZURE.
   An arrest without a warrant may be viewed as unlawful if it
   appears that it was made as a subterfuge for a search and
   seizure.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 6–8, 12]  5 Am Jur 2d, Arrest § 24 *et seq.*
[2]  5 Am Jur 2d, Arrest § 23.
[4]  5 Am Jur 2d, Arrest § 25.
[5]  5 Am Jur 2d, Arrest § 3.
[9]  5 Am Jur 2d, Arrest § 2.
[10, 11]  5 Am Jur 2d, Arrest § 71.
[13]  21 Am Jur 2d, Criminal Law § 440 *et seq.*

6. Same — Without Warrant — Reasonable Belief — Reliable Sources.

An officer's reasonable belief that a felony has been committed, to justify an arrest without a warrant, must be based on what he observes or what he learns from reliable sources.

7. Same—Reasonable Belief—Felony—Criminal Informant.

Information supplied to an officer ·from reliable citizen source that a felony has been committed may be enough to found a reasonable belief; if the information on which the reasonable belief is founded comes from a criminal informant, the State or government must be prepared to submit data establishing the reliability of the informant on the basis of past experience.

8. Same—Without Warrant.

Arrest without a warrant and subsequent search of defendant *held,* to be valid and reasonable where the record indicates that a citizen telephoned to report that he had seen a safe loaded into the trunk of a car under suspicious circumstances at 5 a. m.; officers, who were dispatched to the scene, found the vehicle with one headlight out as reported; and a safe was visible in the trunk.

9. Same—Constitutional Law—Probable Cause.

Whether an arrest was constitutionally valid depends in turn upon whether at the moment the arrest was made, the officers had probable cause to make it, and whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to justify a prudent man in believing that the accused had committed or was committing an offense.

10. Same—Magistrate's Examination—Testimony—Breaking and Entering.

Officer's testimony at examination that he had arrested defendant for "investigating a breaking and entering" at a time when no offense had been reported, *held,* not to taint the prosecution of defendant for the crime of breaking and entering in the nighttime, even though the officer may not have observed the niceties of investigation by charging defendant in technical language when he placed him under arrest (CL 1948, § 750-.110).

11. Same—Validity—Formal Charge.

Officer's words in arresting defendant for "investigating a breaking and entering," where the formal charge was later refined

by the prosecutor to one of "*breaking and entering in the nighttime,*" *held,* sufficient to inform defendant that he had been apprehended and arrested (CL 1948, § 750.110).

12. SAME—VALIDITY—BREAKING AND ENTERING.

Fact that officer learned the details of the commission of the crime of breaking and entering in the nighttime after arresting and bringing defendant to the station house does not change fact that the arrest was valid, where he had reasonable ground at that time to believe that a felony had been committed (CL 1948, § 750.110).

13. CRIMINAL LAW—EXAMINATION—BREAKING AND ENTERING—RETURN.

Statement of magistrate at examination of defendant for crime of breaking and entering in the nighttime that "there was enough in there to my mind to think he possibly could have been the one to have committed it on the amount of testimony given here," when considered in context with other remarks of the magistrate, *held,* not to invalidate the examination, as the record and magistrate's return show that the examination complied sufficiently with statutory and case law requirements (CL 1948, § 750.110).

Appeal from Calhoun; Coleman (Creighton R.), J. Submitted Division 3 October 6, 1966, at Grand Rapids. (Docket No. 69.) Decided January 10, 1967. Leave to appeal denied by Supreme Court March 22, 1967. See 379 Mich 756.

Frank S. Wolfe was convicted of breaking and entering in the nighttime. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John M. Jereck,* Prosecuting Attorney, for the people.

*Roger H. Nielsen,* for defendant.

FITZGERALD, J. The function of an appellate court opinion from antiquity to modern times has been to furnish precedent and guidelines to the bench

and bar. In recent years, a new dimension has been added in criminal cases. Law-enforcement agencies now have a vested interest in the appellate opinion in this day and age of change in the approach to criminal prosecution.

It is with this in mind that we here seek to furnish a guideline not only for prosecutor, defense attorney, and judge, but also those charged with the responsibility of the apprehension of lawbreakers.

The facts of this case are relatively simple, and yet they bring into play a broad spectrum of incidents which, however, narrow down into the question of the validity of an arrest without warrant.

This case should be carefully contrasted with recent landmark cases. It was not an arrest for a traffic violation with subsequent search; it did not involve the finding of variant evidence under a search warrant valid for other evidence; it did not involve contraband such as narcotics, policy tickets, or concealed weapons.

The sole question we have before us is the latitude of the police in making an arrest, without warrant, based on "prudent belief" and physical evidence visible to the world, coupled with other probative circumstances such as time of day, recognition of the suspects, and like factors.

The facts are as follows: On September 20, 1963, a citizen named Fred Kendall was driving through the city of Battle Creek at about 4:50 a.m. As he drove along, he observed 2 men attempting to lift a safe into the trunk of an old model car. When he passed the vehicle, he looked in his rear view mirror and noticed it had only one headlight. His suspicions aroused, he stopped at the public telephone booth and called the Battle Creek city police to report the incident he had seen.

His call came into the dispatch office of the Battle Creek police department describing the scene and Lt. Theral W. Smith left to investigate the report. While responding to the call, he saw a vehicle coming toward him with one headlight and, as it passed, he recognized the car and also observed an object sticking out of the trunk.

He turned around to pursue the car and in the light of his headlights observed that the object in the trunk was a safe. He thereupon radioed another Battle Creek police car, advised it of his location, and proceeded to stop the vehicle carrying the safe. Lt. Smith, after requesting the occupants of the car to step outside, recognized them, one being Frank St. Clair Wolfe, the defendant herein, and the other James McDonald, both of whom he placed under arrest. Soon thereafter 2 other officers arrived, at which time Lt. Smith directed them to take Wolfe and McDonald into custody, to search and handcuff them and transport them to the police station. The car was driven to the police station where police officers examined it and removed the safe and other evidence offered in the trial of this case. It was after the return to the police station that the officers learned of a report of a safe being stolen.

The defendant was charged with the crime of breaking and entering in the nighttime.* Following examination, he was bound over for trial.

Timely objection to the introduction of the evidence seized in the search was made at both the preliminary examination and the circuit court levels, the motions being denied. A further ground was urged in the circuit court for quashing the information, that being that the justice of the peace did not at the conclusion of the examination make a

---

* CL 1948, § 750.110 (Stat Ann 1962 Rev § 28.305).—REPORTER.

finding that a felony had been committed and that there was probable cause to believe that defendant committed it.  This motion was likewise denied, the trial proceeded, and defendant was convicted following a jury trial.

The defendant has appealed, again setting forth the grounds previously urged, *i.e.,* that the search and seizure was unreasonable and illegal and that he was improperly bound over by the justice of the peace.

It is obvious that the prime question before us is whether or not a valid arrest was had in this case and whether, if it was not valid, the evidence procured thereby should have been suppressed.  As stated by Justice Stewart in *Beck* v. *Ohio* (1964), 379 US 89, 96 (85 S Ct 223, 13 L ed 2d 142):

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed."

Thus, we can only reconstruct the information which was available to Lt. Smith at the time the arrest took place.

Going back over the record, we find that Lt. Smith left the station house in response to a call from a citizen stating that he had seen 2 men lifting a safe into the trunk of a car at a given intersection in the city of Battle Creek and that this car had one headlight.  He later encountered this car, stopped it, and placed the occupants thereof under arrest, the search being subsequent thereto.

It is now necessary to go to the record of the preliminary examination to find the explanation of the arrest as made by Lt. Smith:

"*Q.* Mr. Smith, for what offense did you arrest Mr. Wolfe?

"*A.* Investigating a breaking and entering."

It is noted that up to this point no report of a breaking and entering had been made to the Battle Creek police department and that, indeed, Lt. Smith did not learn of a breaking and entering until he returned to the station house with the defendant herein in his custody. The only previous communication to the Battle Creek police department had been from Mr. Kendall reporting the safe-loading scene which to him had looked questionable.

That an arrest without a warrant may be made in Michigan goes without question, and indeed is sanctioned under a variety of circumstances by CL 1948, § 764.15 (Stat Ann 1954 Rev § 28.874). Its validity, however, must be tested by the facts.

A succinct summing up of the state of law regarding an officer's power to arrest without a warrant is stated in George, Constitutional Limitations on Evidence in Criminal Cases, Institute of Continuing Legal Education, 1966, pp 12, 13:

"It is important to note that the officer must 'believe' and not merely 'suspect' that the person arrested has committed the felony. Cf. *Beck* v. *Ohio* (1964), 379 US 89 (85 S Ct 223, 13 L ed 2d 142). Often this is a verbal distinction which laymen do not make, but officers should be trained to testify in terms of belief and not of 'suspicion.' Even if there is belief, the trial court must later determine whether the belief was reasonable under the circumstances. *Wong Sun* v. *United States* (1963), 371 US 471 (83 S Ct 407, 9 L ed 2d 441); *Henry* v. *United States* (1959), 361 US 98 (80 S Ct 168, 4 L ed 2d 134). If the arrest is viewed as a subterfuge for a search and seizure, it may be viewed as unlawful on that basis alone. *Jones* v. *United States* (1958), 357 US 493 (78 S Ct 1253,

2 L ed 2d 1514). The standards in the Federal cases control so far as the States are concerned, as a result of *Mapp* v. *Ohio*, 367 US 643 (81 S Ct 1684, 6 L ed 2d 1081, 84 ALR 2d 933). *Cf. Stoner* v. *California* (1964), 376 US 483 (84 S Ct 889, 11 L ed 2d 856).

"The officer's reasonable belief must be based on what he observes or what he learns from reliable sources. Offenses are committed in the officer's presence if they are ascertainable through sight, sound, smell, or touch. Information supplied from a reliable citizen source is probably enough to found a reasonable belief; if it comes from a criminal informant, the State or government must be prepared to submit data establishing the reliability of the informant on the basis of past experience, *e.g., Draper* v. *United States* (1959), 358 US 307 (79 S Ct 329, 3 L ed 2d 327)."

Michigan's Supreme Court had occasion to consider a fact situation comparable to the instant case in *People* v. *Williams* (1962), 368 Mich 494 (certiorari denied by Supreme Court of the United States [1963] 373 US 909 [83 S Ct 1297, 10 L ed 2d 411]). The question before the Court and facts there were stated as follows (pp 498, 499):

"Was evidence taken by officers from defendants' car (5 automobile tires) unlawfully seized and, therefore, should it have been suppressed as such upon defendants' motion to suppress filed and heard by the court in advance of trial?

"At the preliminary examination the arresting officer testified, in substance, that at about 3:30 a.m., while assigned to scout a certain area, he received radio instructions to go to a specific location because of a report of the presence there of a suspicious looking man; that the officer went as directed and saw a citizen on the sidewalk who told him that he had seen a suspicious man rolling a new, packaged or wrapped tire on the street toward

an automobile still parked nearby and that the man had placed the tire either in the trunk or under the rear end of the car; that he, the officer, thought this might mean that the tire had been stolen because at that hour of the night no tire sales place was open in that neighborhood in which a new tire might be purchased; that, in consequence, he shined a flashlight into the car and found the 2 defendants hiding in the front of the car, lying in a prone position; that he thought the tire might be in the car; that he then asked for the key to the trunk, but defendants said they had not had one for years; that the officer asked the male defendant what he had done with the tire he had been rolling down the street and that he denied having it; that he then arrested defendants and searched them; that in the male defendant's pocket he found a pair of pliers, a paring knife, tan gloves, and a hacksaw; that after taking defendants and the car a report came about the 5 tires having been stolen from the structure above described; that thereafter the officers gained access to the trunk through the rear seat and found 5 new tires later identified by the owner as those taken from said structure, the tires having marked thereon the name and location of another gasoline station in which he was a partner.

"We think the above was sufficient to give rise to probable cause for the officers to believe that a crime had been committed by defendants and warranted the arrest and search of defendants and subsequent search of the car. A reasonable mind could hardly have concluded otherwise on the basis of such knowledge and information."

In the resolution of the instant case, we can subscribe to the last quoted paragraph, *supra*, and state that the facts before us would lead a reasonable mind to the conclusion reached by Officer Smith. We further feel that this falls within the test laid down by *Beck, supra*. A safe being transported in a car trunk at 5 a.m., a telephone call to the police

station by a responsible citizen reporting seeing the safe being loaded, the dispatch of an officer to investigate, and the physical evidence of the safe in the trunk of the car, which was readily observable by anyone, validates this arrest without warrant and the subsequent search.

A common thread runs through the *Beck* and *Williams Cases, i.e.,* a marshalling of the facts known to the officer at the time the arrest was made. In *Beck* the conviction fell because the court felt that two facts alone or in combination were not enough; that it was not enough to know the subject and his previous record. In *Williams,* the conviction was sustained under facts remarkably similar to those of the instant case.

The United States Supreme Court's test remains and we hold that this case fulfills that test: Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense.

That Officer Smith may not have observed the niceties of investigation by charging the defendants in technical language when he placed them under arrest does not taint this prosecution.

Though the formal charge was later refined by the prosecution to the specific one under which defendant was charged, Officer Smith's words in making the arrest were sufficient to inform defendant that he indeed had been apprehended and arrested. The fact that Officer Smith learned the details of the commission of the crime after returning to the station house does not change the fact that he had reasonable grounds to believe that a felony had

been committed. The arrest being valid, we hold that the motion to suppress the evidence was properly denied.

Appellant raises a technical question regarding the binding over for defendant, pointing out that the justice stated orally, "There was enough in there to my mind to think he *possibly* could have been the one to have committed it on the amount of testimony given here." This oral statement must be considered in context wherein the court stated in full:

"Due to the evidence given here today, I am going to bind Mr. Wolfe over for breaking and entering in the nighttime. Obviously there was a crime committed and I do feel there was enough in there to my mind to think he possibly could have been the one to have committed it on the amount of testimony given here. So I will bind him over to stand trial in the circuit court for Calhoun county."

Again, niceties in terminology should not thwart the law-enforcement process and we hold that the examination as shown by the record and the justice's return complied sufficiently with the statutory and case law requirements of this State.

The grounds assigned by defendant in this appeal do not persuade us that error was committed in the preliminary examination nor in the trial of the matter.

Affirmed.

BURNS, P. J., and T. G. KAVANAGH, J., concurred.