PEOPLE v. JOHNNIE MAE JONES.

PEOPLE v. WRIGHT.

1. Criminal Law—Arrest Without Warrant—Reasonable Cause.
   Any police officer may, without a warrant, arrest a person when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it (CL 1948, § 764.15).

2. Same—Arrest Without Warrant—Reasonable Cause.
   The test of reasonable cause for arrest without a warrant is whether a reasonable mind would have reached the same conclusion made by the arresting officer that this defendant was engaged in the commission of a felony.

3. Same—Breaking and Entering—Arrest Without Warrant—Reasonable Cause.
   Arrest of defendant for breaking and entering was lawful as based on probable cause where officer responding to police

---

References for Points in Headnotes
[1-3] 5 Am Jur 2d, Arrest § 24 et seq.
   Right of search and seizure incident to lawful arrest, without a search warrant, 32 ALR 680, s. 51 ALR 424, 74 ALR 1387, 82 ALR 782.
   Lawfulness of nonconsensual search and seizure without warrant, prior to arrest, 89 ALR2d 715.
[4, 5] 29 Am Jur 2d, Evidence § 425 et seq.
[6] 47 Am Jur, Searches and Seizures § 19.
[7] 29 Am Jur 2d, Evidence § 496.

radio call and in pursuit on foot of suspects fleeing scene of crime saw defendant driving her car slowly along the wrong side of street near the scene of the crime with its lights out at 3:45 a.m. and signaled to another officer in police cruiser to make arrest.

4. Same—Search and Seizure—Motion to Suppress—Review.

Review of denial of motion to suppress evidence claimed to be obtained by illegal search and seizure is limited to examination of that evidence presented at the preliminary hearing.

5. Same—Trial—Motion to Suppress.

Renewal of a motion to suppress evidence and arguments thereon at trial were not prejudicial to defendant or to people where the motion and arguments were made out of presence of jury.

6. Same—Search and Seizure—Incident to Lawful Arrest.

Search of defendant's car which resulted in seizure of crowbar used in subsequent prosecution for breaking and entering was not so remote as to be no longer incident to her lawful arrest and was reasonable and substantially contemporaneous under circumstances where defendant and her codefendant were detained at scene 45 minutes while police officers investigated crime and were then taken toward police station but were returned to the scene 15 minutes later without reaching police station at which time defendant's car was searched.

7. Same—Combined Trial—Hearsay as to One Defendant—Discretion.

Trial court did not abuse discretion in refusing to allow admission of answer of witness on cross-examination which was damaging hearsay as to one defendant and irrelevant as to the other.

Appeal from Muskegon, Piercey (John H.), J. Submitted Division 3 February 6, 1968, at Grand Rapids. (Docket Nos. 1,697, 1,722.) Decided July 23, 1968. Application by defendant Jones for leave to appeal denied October 10, 1968. See 381 Mich 782. Application by defendant Wright for leave to appeal denied December 10, 1968. See 381 Mich 791.

Johnnie Mae Jones and Eugene Wright were tried together and convicted of breaking and entering. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Paul M. Ladas,* Prosecuting Attorney, for the people.

*James J. Kobza,* for defendants on appeal.

FITZGERALD, P. J.   The defendants were tried together and convicted by a jury in the circuit court for the county of Muskegon of the crime of breaking and entering.[1]   They both appeal their conviction to this Court alleging slightly different errors in their particular conviction. The facts of their apprehension are not disputed.

Reference is made to the map of the area (page 373). The police were summoned to the area early in the morning of November 24, 1964. Officers #1 and #4 began chasing 3 men from the jewelry store south down the alley to Isabella street, then east on Isabella. Officer #2 drove his police car down Getty street and stationed himself on Isabella street. While running, Officer #1 noticed a 1959 Pontiac slowly moving west on Isabella on the south side of the street with the lights out. He shouted, "Stop that car." Officer #2 did so and arrested the driver, defendant Johnnie Mae Jones. Officers #1 and #4 arrested defendant Eugene Wright behind a house further east on Isabella street. Defendant Jones was placed in the police cruiser and Officer #3 took the keys of the 1959 Pontiac automobile and gave it a cursory search.

Officer #2 started driving both defendants to jail, but upon reaching the jail he was told by radio

---

[1] CL 1948, § 750.110 (Stat Ann 1962 Rev § 28.305), as amended by PA 1964, No 133, eff. August 28, 1964.

to return the defendants to the scene of the incident immediately. He did so, the 1959 Pontiac was searched by Officer #3 in the presence of defendant Jones, and a crowbar was seized from the vehicle. That crowbar was later introduced into evidence at the trial.

Two issues are raised by defendant Jones: (1) Was her arrest lawful in that the arresting officer had probable cause to believe that she was engaged in a felonious act? (2) Was the search of her car, without a warrant, after she had left the scene and then returned in the custody of the police, and the introduction into evidence of a crowbar then seized, in violation of the Fourth Amendment to the United States Constitution and Const 1963, art 1, § 11?

Defendant Wright raises these same 2 issues and alleges that if we find the arrest of defendant Jones and the search and seizure of the crowbar from her car to be illegal, then his conviction was error in that the crowbar was admitted in the consolidated trial. He admits that if the crowbar was properly obtained and introduced, then his conviction must stand. Defendant Jones raises a third issue which will be considered separately.

We first consider whether Officers #1 and #2 had reasonable cause to believe that defendant Jones was in some way connected with the felony. She refers us to the holding of the Supreme Court of this State in the case of *People* v. *Zeigler* (1960), 358 Mich 355, which limits review on appeal of the propriety of a denial of a motion to suppress evidence to that evidence adduced at the preliminary hearing. Also, see *People* v. *Kaigler* (1962), 368 Mich 281. By the application of this rule, defendant Jones would then say that insufficient cause was shown at that time to permit the introduction of the crowbar as it was allegedly the product of an illegal seizure

following an illegal arrest. The circumstances of the arrest could not be amplified at the trial:

"Where a motion to suppress has been passed upon by the trial judge before the trial, the matters should not be gone into again upon the trial." 2 Gillespie, Michigan Criminal Law and Procedure (2d ed) § 874.

However, the trial court did allow the motion to suppress to be renewed by the defendant Jones and a final decision was postponed until the testimony of the officers was had in chronological order.

The above rule is applied to prevent the jury from considering the manner in which evidence is obtained. In the present case, the renewed motion and arguments presented were made out of the presence of the jury and although the trial court should have ceased the debate at its inception, we do not find the argument to be prejudicial to the defendant or the people. Cf. *People* v. *Blessing* (1966), 378 Mich 51.

We will limit our review on appeal in deference to the *Zeigler* rule, and find from the record made at the preliminary examination that Officer #2 had reasonable cause to stop and arrest the defendant Jones. Testimony there taken was limited by an application of the hearsay rule as to the communications received by the officers in their police cruiser radios which motivated them to proceed to the jewelry store. Such testimony was permitted on the trial. We make reference to CL 1948, § 764.15 (Stat Ann 1954 Rev § 28.874):

"Sec. 15. Any police officer may, without a warrant, arrest a person—

\*   \*   \*

"(c) When a felony in fact has been committed and he has reasonable cause to believe that such person has committed it;

"(d) When he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it;

\* \* \*

"(f) When he has received such positive information broadcast from any recognized police or other governmental radio station, or teletype, as may afford him reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it;"

Again, the court is faced with the task of applying a definition of "reasonable cause" to the particular facts of a case. The officers clearly had knowledge of the occurrence of a breaking and entering. Three witnesses had been awakened by noises emanating from the jewelry store and they called the police. Their precise revelations to the police were properly excluded by the hearsay rule, but they could testify as to their own observations made at that time. We disagree with the argument that the police officers must be prohibited from stating any purpose for their going to the jewelry store, and find that their presence at that location "as a result of a police call" may be considered in determining reasonable cause for their actions there within the limitations of the hearsay rule.

Thus, we have the officers arriving at the scene, but we do not know why they have been summoned. Officer #1 alights from his cruiser and sees men moving about behind the jewelry store. They begin running down the alley toward Isabella street. Running himself, he yells, "Halt, police", but the men continue to flee and the officer takes up the chase. Upon reaching Isabella and turning east, he sees the 1959 Pontiac begin to move away from the curb on the south side of Isabella in a westerly direction with no lights on. He yells, "Stop that car, don't let it get away", and continues to pursue

the fleeing men, giving warning shots from his gun. Officer #2 had arrived at the scene in another cruiser. After letting his partner out alongside the jewelry store, he drove south on Getty and turned left onto Isabella. He heard the cry of Officer #1 contemporaneously with his own observation of the 1959 Pontiac moving toward him with the lights out. He responded to the direction of Officer #1 and stopped the Pontiac, arresting its driver, Johnnie Mae Jones.

In the case of *People* v. *Gonzales* (1959), 356 Mich 247, the Supreme Court disallowed a search of a vehicle following its being stopped for a traffic violation. Officer #2, under no stretch of the imagination, can be said to have stopped the Pontiac with the intention of apprehending a violator of the traffic laws. We must consider the additional fact that the car was more than suspicious to a reasonable-minded police officer by reason of its proximity (one-half block) to a location to which several police cruisers had been summoned, by reason of its placement on the wrong side of the street, because of its beginning to move away when fleeing men, pursued by a police officer, passed by it and by reason of its not having lights turned on at this hour in the morning. It is true that suspicion alone is insufficient to warrant an arrest and subsequent search. *People* v. *Burt* (1883), 51 Mich 199. However, we refer to our detailed discussion on this issue in *People* v. *Wolfe* (1967), 5 Mich App 543, 546, where it is stated:

"The sole question we have before us is the latitude of the police in making an arrest, without warrant, based on 'prudent belief', and physical evidence visible to the world, coupled with other probative circumstances such as time of day, recognition of the suspects, and like factors."

We refer further to our discussion and reference in *Wolfe* to George, Constitutional Limitations on Evidence in Criminal Cases, Institute of Continuing Legal Education (1966), pp 12, 13, that it is important to find that the arresting officer must "believe" and not merely "suspect" that the person arrested has committed the felony. The test is this: would a reasonable mind have reached the same conclusion made by the arresting officer that this defendant was engaged in the commission of a felony? See *People* v. *Williams* (1962), 368 Mich 494; *Beck* v. *Ohio* (1964), 379 US 89 (85 S Ct 223, 13 L Ed 2d 142). We add a further portion of our holding in *Wolfe* for clarification of this rule (p 552):

"Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed or was committing an' offense."

The "reasonably trustworthy information" available to Officer #2 was provided by Officer #1 and by the independent observations of Officer #2.

Following the initial apprehension of defendant Jones, the police confirmed the details of the burglary, witnesses appeared on the scene and told of people going to and leaving the jewelry store by way of Isabella street, and the defendant herself stated that she was only driving around looking for a place to have her car repaired. The time of her apprehension was approximately 3:45 a.m. In *Wolfe,* we stated:

"The fact that Officer Smith learned the details of the commission of the crime after returning to the station house does not change the fact that he had reasonable grounds to believe that a felony had been committed."

We see no validity in curtailing the activities of police officers who are called to investigate a reported incident at 3:30 a.m., quite possibly of an illegal nature, by requiring them to alight from their converging cruisers, and stroll about the premises, building up additional reasonable causes while fleeing men pass them by and escape. In the interest of good law enforcement under the facts of this case, a darkened car a half-block away, slowly moving on the wrong side of the street, should not be permitted to leave the scene and escape with a police cruiser pulling aside to permit its passage. These are circumstances such as would properly motivate any conscientious police officer to reasonably believe that these people had committed, or were committing, a felony.

The 2 defendants were placed in a police cruiser and they remained at the scene on Isabella until 4:30 or 4:45 a.m., whereupon Officer #2 began driving to the police station a mile away. He was summoned by radio to return the defendants to the scene and he did so before reaching the station. Upon the return, Officer #3 again searched the 1959 Pontiac in the presence of its owner, defendant Jones, and found a crowbar under the back seat. The car had not been moved from where the defendant was arrested. It is this second search which is alleged to be illegal, first as the result of an illegal arrest, which has been resolved above, and second, as a violation of Const 1963, art 1, § 11. Defendant refers us to the case of *Preston* v. *United States* (1964), 376 US 364 (84 S Ct 881; 11 L Ed 2d 777), as

being definitive of the rule regarding search of an automobile without a warrant after its owner is in the custody of police. We have recently applied this rule in the case of *People* v. *Dombrowski* (1968), 10 Mich App 445, holding that the search of an automobile without a warrant, after the defendant was in jail, was illegal and that the fruits or implements found in that search are inadmissible if not among the admissible contraband set forth in Const 1963, art 1, § 11. The "remoteness" in time or place of the search is the objectionable factor which invalidates such evidence, as the search was not necessary to prevent the destruction or removal of evidence or the driving away of the vehicle by the defendant. We are faced with our pronouncement in *Dombrowski* that (p 449):

"We require the procurement of a search warrant whenever the evidence obtained is not listed among those articles admissible without a warrant, and whenever the defendant and his vehicle are in police custody previous to the search and the search is not substantially contemporaneous with the arrest."

It is settled that a search of an automobile may be made incident to an arrest, although the defendant is already in police custody. The time element involved, and the particular circumstances of the arrest, are important to the question of remoteness. We agree with the people that the search cannot always be made immediately and instantaneously after the arrest when other matters involving apprehension of other suspects and additional investigations are more pressing. Nor may the defendant already be jailed or booked when the warrantless search takes place. (*Preston, supra.*) Then enters the "reasonableness" test of *Preston,* whereby the particular facts are tested by reference to the rea-

sonableness of the search under the circumstances, as compared with the requirement that the officers first obtain a search warrant. See *Cooper* v. *California* (1967), 386 US 58 (87 S Ct 788; 17 L Ed 2d 730). Thus, we will grant the people the 45 minutes following the arrest of defendant Jones, while they attended to these other matters, as being incident to the arrest. The problem is that period of time, no more than 15 minutes, when she was not present at the scene while the car and the keys remained in the custody of the police. Shall we demand that at this time the requirement of obtaining a search warrant can become obligatory upon the police as the defendant is no longer present, and that any search would then not be incident to her arrest although the defendant returned before any search was made? This is admittedly a close question and we note that our decision is confined to these facts in holding that the police officers acted reasonably, under the circumstances, in searching this vehicle, for the automobile was directly relevant to the facts which created the reasonable cause for Officer #2 to arrest the defendant. A question of whether the search and seizure is unreasonable depends on the facts and circumstances of each case. *Cooper* v. *California, supra.* This search is close enough in time and place to be held to be incident to the arrest in that the time of the search was 4:45 a.m., the defendant was present and had not yet been booked, the car had not been moved, and the car was related to the cause for defendant's arrest. Under these particular facts, the search was not unreasonable and the admission into evidence of a crowbar then found in the car was not erroneous.

The appeal of defendant Wright is ended with our approval of the admission of the crowbar into evidence in the consolidated trial. We do not reach the question of his standing to object to the admis-

sibility of evidence illegally obtained from his co-defendant.

Counsel for defendant Jones was limited by the trial court on cross-examination of Officer #3 because an application of the hearsay rule would hold the answer of Officer #3 inadmissible as to defendant Wright. Bolt cutters were seized from the car of defendant Jones. There was no evidence in the present case that bolt cutters had been used in the burglary. They were given to the chief of police of Highland Park, Illinois, to assist him in investigating another crime. We reproduce part of the record to clarify this issue:

*Defendant's counsel:* "Do you know anything about the circumstances in Highland Park, any of the facts of that situation which prompted the police down there to ask for those bolt cutters?

"*Officer:* Yes, sir I do.

"*Q:* What, and I realize this might be hearsay as far as Mr.—"

Whereupon, the jury was excused. Discussion was then had on the conversation between the officer and the Highland Park police concerning the alleged lack of relationship between defendant Jones and the bolt cutter, and counsel for defendant continued:

*Counsel:* "Well, if the Court please. I'd like to have the jury hear this testimony that has just gone in on the record.

"*The Court:* Well, some of it is alright. Some of it I am not going to let it be allowed, because the moment it was heard this defendant Wright could move for a mistrial as to him. Any explanations which this defendant [Jones] is alleged to have given him [Officer #3], in that type of questioning, as to how this got in here, may be put in, but this— none of this testimony is going to be allowed with the chief of police in Highland Park. That is out."

The court found this to be damaging and inadmissible testimony against Mr. Wright which was not relevant or material to any issue in the case.

Defendant Jones says that the trial court should have admitted the testimony of the officer and then carefully instructed the jury to disregard it as to defendant Wright. By his own admission, counsel for defendant Jones did not request the court to do so. The conversation with the Highland Park police chief was, indeed, damaging as to defendant Wright, and when its dubious benefit to defendant Jones is balanced, we cannot find any error in the refusal of the trial court to admit it. A jury cannot be told to disregard seriously damaging hearsay as to one defendant in order that it be admitted on behalf of the other defendant for irrelevant reasons. It is true that combined trials necessitate instructions to the jury to disregard evidence as to one defendant and consider it as to the other; but in cases of dubious benefit to both parties-defendant, we agree that the trial court had properly exercised its discretion in stopping such irrelevant cross-examination. *People* v. *McArron* (1899), 121 Mich 1, 36.

Affirmed.

J. H. Gillis and Bowles, JJ., concurred.