STATE, Respondent, v. DiMAGGIO and another,
Appellants.*

*No. State 82. Argued December 4, 1970.—Decided January 5, 1971.*
(Also reported in 182 N. W. 2d 466.)

* Motion for rehearing denied, without costs, on March 2, 1971.

568

For the appellant Pipito there were briefs by *William J. Mantyh* and *Honeck, Mantyh & Arndt,* all of Milwaukee, and oral argument by *William J. Mantyh.*

For the appellant DiMaggio there was a brief and oral argument by *Joseph P. Balistrieri* of Milwaukee.

For the respondent the cause was argued by *Lee Edward Wells,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

HANLEY, J. Numerous issues are presented on this appeal. We will first consider the issues that are common to both cases and then consider the issues personal to each defendant.

1. *Were the defendants' apprehension, detention and arrests made upon the basis of probable cause or common-law standards?*

Pipito contends that Officer Retzer was not possessed of sufficient information to justify an arrest without warrant in these circumstances. He contends that at the moment Retzer put the handcuffs on him (just after discovering the blackjack), he (Retzer) had only hearsay information (from the Swans) that a crime had been committed and no information that Pipito was connected with the crime, if one had occurred.

Probable cause for an arrest without a warrant requires that an officer have more than a mere "suspicion" (*State v. Camara* (1965), 28 Wis. 2d 365, 137 N. W. 2d 1; *Beck v. Ohio* (1964), 379 U. S. 89, 85 Sup. Ct. 223, 13 L. Ed. 2d 142; *Terry v. Ohio* (1968), 392 U. S. 1, 88 Sup. Ct. 1868, 20 L. Ed. 2d 889), but obviously he does not need the same quantum of evidence necessary for a conviction. The standard is objective, and more than a

good faith belief on the part of the officer is necessary. *Browne v. State* (1964), 24 Wis. 2d 491, 129 N. W. 2d 175, 131 N. W. 2d 169, certiorari denied (1965), 379 U. S. 1004, 85 Sup. Ct. 730, 13 L. Ed. 2d 706.

But it is only necessary that the information leads a reasonable officer to believe that guilt is more than a possibility. *Browne, supra.* The probability is one which would cause a reasonably prudent man—"not a legal technician"—to act. *Brinegar v. United States* (1949), 338 U. S. 160, 175, 69 Sup. Ct. 1302, 93 L. Ed. 1879. Moreover, the information which the officer is acting upon may be based in part on hearsay. *Browne, supra.*

In this case, Officer Retzer was told, by apparently reliable citizens, that masked men were assaulting their neighbor and had forced him into his garage. This hearsay information was confirmed by Retzer's own observation when he saw a masked man appear in a doorway of the Theilacker home. Upon seeing uniformed officers outside, the man leaped back into the home and slammed the door. At this point Retzer had "probable cause" or "reasonable grounds to believe" that criminal activity was in progress.

Probable cause to conclude that Pipito was connected with such criminal activity was supplied when a citizen informed Retzer that Pipito was fleeing from the house. This hearsay information was confirmed when a few minutes later Retzer observed a man only a block or two away—

(1) A man who he knew did not live in the neighborhood;

(2) A man who was pale and out of breath from running;

(3) A man who was armed with a dangerous weapon which was in plain view;

(4) A man who generally matched a description given by the Swans; and

(5) A man whom he recognized as a burglary suspect from pictures in the Safety Building.

It is often stated that mere flight does not give rise to probable cause for an arrest. *Wong Sun v. United States* (1963), 371 U. S. 471, 83 Sup. Ct. 407, 9 L. Ed. 2d 441. This is correct; however:

". . . deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea,* and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." *Sibron v. New York* (1968), 392 U. S. 40, 66, 67, 88 Sup. Ct. 1889, 20 L. Ed. 2d 917; *Brinegar, supra;* and *Husty v. United States* (1931), 282 U. S. 694, 51 Sup. Ct. 240, 75 L. Ed. 629.

Therefore, while flight alone is not enough to justify an arrest, flight may be conclusive when viewed in connection with other factors. In this case the sufficiency of the other factors combined with flight is quite adequate to justify the arrest of Pipito.

It would be contrary to the interest of society and in nowise enhance due process to require officers called to the scene of a crime to stroll about the premises interviewing witnesses, inspecting physical evidence and additionally building up probable causes to arrest—while masked men flee past them and make good their escape. *See*: *People v. Jones* (1968), 12 Mich. App. 369, 163 N. W. 2d 22, 28.

As to defendant DiMaggio, Officer Hutchinson had information that a crime was in progress in the Theilacker garage. When he approached the garage he could hear a radio listing police calls. He then saw a masked man appear in the doorway, who leaped back at the sight of the police officers. He then circled the garage and saw a man, only a few feet from the garage window, starting to flee the scene. He pursued DiMaggio, and DiMaggio was eventually detained "breathing heavily," after having run in first an easterly direction and then a westerly

direction. Upon being detained, DiMaggio told Officer Hutchinson that he "lived on the East side" and was "working for some people."

We conclude that Officer Hutchinson had sufficient probable cause to arrest DiMaggio.

2. *Did the searches of the defendants after detention and arrest deprive them of their constitutional rights?*

Both defendants were arrested on the basis of probable cause, and the subsequent search was proper. A search of DiMaggio revealed nothing. Pipito's search uncovered a loaded .38-caliber revolver, in addition to the partially exposed blackjack. The search of Pipito would also be legitimate under the rule in *Terry v. Ohio, supra.* In *Terry* the court concluded at page 27:

". . . that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; . . ."

3. *Did the trial court have jurisdiction over the persons of the defendants on the basis of valid arrest and written complaints issued by the office of the district attorney?*

Sec. 954.02 (4) (m), Stats., provides that:

"If the defendant has previously been validly arrested without warrant and is still in custody, no summons or warrant is required and the defendant may be brought before a judge of the county court with a complaint subscribed and sworn to before either the district attorney or a magistrate."

This obviously does away with the necessity of obtaining a warrant for the arrest of one who is already under arrest. But the defendants contend that the statute is unconstitutional because it does away with the guarantee

that at some point prior to trial a judgment be made by a neutral and detached magistrate as to whether or not probable cause for an arrest exists. The statute does no such thing. The defendants were entitled to and did challenge the validity of their arrest. A finding on this matter was made prior to the commencement of the trial and that is all the defendants were entitled to.

The above procedure was approved by this court in *Pillsbury v. State* (1966), 31 Wis. 2d 87, 93, 142 N. W. 2d 187:

". . . Here, the defendant, while validly under arrest without a warrant, appeared before a magistrate upon a sworn complaint. The issuance of a warrant on the complaint for the arrest of the defendant under the circumstances would have been a superfluous and useless act to bring him before the magistrate to answer the charges against him. . . ."

4. *Did the joint trial of Pipito and DiMaggio prejudice their rights and constitute an abuse of discretion?*

The general rule on consolidation of criminal cases is found in *State v. Doyle* (1968), 40 Wis. 2d 461, 469, 162 N. W. 2d 60:

" '. . . A trial court has power to try cases together when the defendants are charged with the same offenses arising out of the same transaction and provable by the same evidence.' . . ."

A motion for severance is addressed to the discretion of the trial court. *Doyle, supra.* Consolidation is a procedural mechanism which avoids repetitious litigation and facilitates the speedy administration of justice. *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155.

There are, of course, circumstances where a joint trial would be unduly prejudicial to the interests of either or both of the defendants; and in that case the interests of administrative efficiency must yield to the mandates of due process. Such circumstances are found where the defendants intend to advance conflicting or antagonistic

defenses. *Mandella v. State* (1947), 251 Wis. 502, 29 N. W. 2d 723. That is not a possible ground in this case since the defendants did not testify—their only defense being the inadequacy of the state's evidence. Severance may also be required when:

". . . there would be presented at the trial 'an entire line of evidence relevant to the liability of only one defendant.' . . ." *Cullen v. State* (1965), 26 Wis. 2d 652, 656, 133 N. W. 2d 284.

It is the "entire-line-of-evidence" doctrine which the defendant Pipito here asserts. This is a difficult call for the trial judge to make since he cannot tell prior to trial exactly what evidence applicable to whom, will be introduced. If it appears during the course of the trial that a good deal of evidence applicable to only one defendant is being developed, the trial judge has an option. He may order a severance at that time (*Nutley, supra*) or the court may elect to give the jury a cautionary instruction to the effect that evidence against one may not be treated as evidence against all, simply because they are being tried together.

In this case the mere fact that Officer Hutchinson testified to chasing and capturing only DiMaggio and Officer Retzer to chasing and capturing only Pipito hardly amounts to an "entire line of evidence," particularly when the testimony of the Swans and Theilackers consistently referred to more than one man. In this case full and specific instructions on this matter were given to the jury. Any error in this regard was either cured by the instructions or was nonprejudicial because the testimony relating to only one defendant was so minor when compared to the total.

5. *Was it an abuse of discretion to deny the defense motion for a new trial judge once a mistrial had been declared?*

Sec. 956.03 (2), Stats., provides:

"SECOND TRIAL. If a jury fails to agree on a verdict or if a new trial is granted and if one defendant moves therefor within 20 days, a trial judge shall be called as provided in sub. (1)."

At the outset of the first trial in this matter, and before any witnesses were sworn or testimony taken, the jury was taken to the Theilacker home for a view of the scene of the crime. During this visit Mr. Theilacker made certain inflammatory remarks in the presence of the jury. After returning to the courthouse, Judge CANNON declared a mistrial sua sponte and dismissed the jury. The defense moved for a new judge pursuant to sec. 956.03 (2), Stats. The motion was denied with these words:

". . . 'Since the cause of the mistrial was outside the control of the counsel and the Court, and since the Court was not ruling against any action or conduct of the parties or counsel in declaring a mistrial, there is no need to transfer the case to a different judge. . . .' "

This was obviously a proper ruling. The judge had not heard any testimony and, therefore, could not have acquired a prejudice as to the outcome of the case. In fact, the declaration of a mistrial evidences a sincere interest that the defendants receive a fair and just trial. Neither defendant complained of prejudice. The statute in question is not applicable to a situation such as this, where the trial proper has not yet commenced.

6. *Did the closing argument of the prosecutor deprive the defendants of their right to a fair trial or of their right against self-incrimination?*

The defendants point to the prosecutor's statements in closing argument: (a) which questioned DiMaggio for his failure to have his employer testify; and (b) which compliment the witnesses for the state in the instant case by comparing them to the witnesses to other large city crimes, as being prejudicial to their constitutional rights.

Upon arrest near the scene of the crime, DiMaggio told Officer Hutchinson that he "was working for some people." DiMaggio did not testify in his own defense, but he did call witnesses on his own behalf who did testify. None of these witnesses explained DiMaggio's presence in the Theilacker neighborhood.

Both counsel and the court noted that the defendants had a right to call witnesses and the right not to testify themselves.

Clearly, the prosecutor was not questioning DiMaggio's right to remain silent. He could in good faith believe that DiMaggio, if he was in fact "working" in the area, would have an employer, employee, co-worker or customer who would verify any work assignment.

The trial court considered the matter carefully and instructed the jury to ignore the statements of the prosecutor and to understand that defendants have a right to remain silent and not to call any witnesses.

In his closing remarks the prosecutor made reference to the widely reported incident in New York City where a nurse named Kitty Genovese was stabbed by an attacker. Nearly 80 people saw or heard this incident and none called the police or attempted to go to her aid. The prosecutor pointed out that he was proud of the citizens of Milwaukee, who, in this case, aided the police and were not afraid to "get involved."

Considerable latitude is to be allowed counsel in closing arguments, subject only to the rules of propriety and the discretion of the trial court. *State v. Bergenthal* (1970), 47 Wis. 2d 668, 681, 178 N. W. 2d 16.

This is not a situation where the prosecutor has expressed an opinion as to the guilt of the defendants and intimated to the jury that such opinion is based on true information which he possesses but which he was not able to get into evidence. *Embry v. State* (1970), 46 Wis. 2d 151, 174 N. W. 2d 521. Moreover, even where a prosecutor's closing argument is improper, that is not grounds

for reversal, if there is sufficient evidence of guilt, independent of such remarks (*Embry, supra*) to justify a conviction.

We are unable to perceive any prejudicial error.

7. *Did the direct and circumstantial evidence presented in this case justify submission of instructions on the crime of party to a crime?*

Sec. 939.05, Stats., provides in part:

"(1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. . . ."

The trial court instructed the jury on the application of this statute in general and to the fact situation presented in this case. The trial court correctly instructed the jury that persons need not have a formal written or oral agreement in order to have a conspiracy:

". . . It is sufficient to constitute conspiracy if there is a meeting of the minds, that is, a mutual understanding to accomplish some common criminal objective or to work together for a common criminal purpose." Wis J I—Criminal, Part I, 400.

The evidence clearly disclosed joint participation and advance planning. A reasonable inference could be

drawn by the jury that both defendants were inside the Theilackers' premises without the owner's consent. The circumstantial evidence connecting the defendants as co-workers in crime was overwhelming.

8. *Can the defendants be convicted and sentenced for more than one criminal offense arising from the same factual transaction?*

"943.32 **Robbery.** (1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means may be imprisoned not more than 10 years:

"(a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; or

"(b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

"(2) Whoever violates sub. (1) while armed with a dangerous weapon may be imprisoned not more than 30 years.

"(3) In this section 'owner' means a person in possession of property whether his possession is lawful or unlawful."

"943.10 **Burglary.** (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than 10 years:

"(a) Any building or dwelling; or

"(b) An enclosed railroad car; or

"(c) An enclosed portion of any ship or vessel; or

"(d) A locked enclosed cargo portion of a truck or trailer; or

"(e) A room within any of the above.

"(2) Whoever violates sub. (1) under any of the following circumstances may be imprisoned not more than 20 years:

"(a) While armed with a dangerous weapon; or

"(b) While unarmed, but arms himself with a dangerous weapon while still in the burglarized enclosure; or

"(c) While in the burglarized enclosure opens, or attempts to open, any depository by use of an explosive; or

"(d) While in the burglarized enclosure commits a battery upon a person lawfully therein.

"(3) For the purpose of this section, entry into a place during the time when it is open to the general public is with consent."

"939.32 **Attempt.** (1) Whoever attempts to commit a felony or a battery as defined by s. 940.20 or theft as defined by s. 943.20 may be fined or imprisoned or both not to exceed one-half the maximum penalty for the completed crime; except that for an attempt to commit a crime for which the penalty is life imprisonment, the actor may be imprisoned not more than 30 years. Whoever attempts to commit a battery as defined in s. 940.205 may be imprisoned not more than one year in the county jail.

"(2) An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor."

"939.66 **Conviction of included crime permitted.** Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; or

"(2) A crime which is a less serious type of criminal homicide than the one charged; or

"(3) A crime which is the same as the crime charged except that it requires recklessness or negligence while the crime charged requires a criminal intent; or

"(4) An attempt in violation of s. 939.32 to commit the crime charged; or

"(5) The crime of attempted battery when the crime charged is rape, robbery, mayhem or aggravated battery or an attempt to commit any of them."

The test for determining whether one offense is included in another, thereby prohibiting separate punishments, is set forth in sec. 939.66 (1), Stats.

The defendants herein entered the Theilacker premises without permission and stated, "All we want is your money." This statement, coupled with possession of burglarious tools, is more than adequate evidence of an "intent to steal." Such intent combined with a nonconsensual entry constitutes the crime of burglary (sec. 943.10, Stats.).

Robbery requires:

(1) The taking of property from
(2) The presence or person of another
(3) With the intent to steal
(4) By the use of force or
(5) By threatening the use of force.

The prosecution gave adequate proof of elements 2, 3, 4 and 5 above. Since the defendants were unable to consummate the crime of robbery by actually taking anything (number 1 above), they could not be charged with robbery. But there was adequate evidence that "but for" the intervention of forces beyond their control, the defendants would have taken something. Therefore, they were properly charged with attempted robbery.

Attempted robbery, in this case, required proof of two elements not also required to prove burglary, to wit: (1) The use of force and (2) from the person of another.

Therefore, since attempted robbery requires proof of elements *in addition* to those elements required to prove burglary, they are separate and distinct crimes. That being so, sec. 939.66 (1), Stats., is inapplicable and conviction and sentencing on each crime separately was permissible. *See generally:* Remington and Joseph, *Charging, Convicting, And Sentencing The Multiple Criminal Offender*, 1961 Wis. L. Rev. 528. *See also: Cullen v. State* (1965), 26 Wis. 2d 652, 133 N. W. 2d

284, and *Jandrt v. State* (1969), 43 Wis. 2d 497, 506, 168 N. W. 2d 602 (theft not an included offense within burglary).

9. *Did the identification of Pipito by Swan in a one-to-one confrontation at the scene of the offense and without counsel violate Pipito's constitutional rights?*

At his preliminary hearing the accused, Pipito, contends that evidence was adduced which was inadmissible, and had it been excluded, the requisite probable cause for bindover would have been absent.

The evidence in question was Mr. Swan's on-the-scene identification of him moments after his arrest. The defendant contends that the identification at the scene was inadmissible because he did not have counsel at the time, as required by the *Wade-Gilbert* rule.[1] On its facts the *Wade-Gilbert* rule is inapplicable to this case because those decisions involved post-indictment lineups—not on-the-spot identifications. The rationale of *Wade-Gilbert* is that absence of counsel at pretrial identifications presents "serious difficulty in depicting what transpires." *Wade, supra,* at page 230.

The Fifth Circuit Court of Appeals concluded that *Wade:*

" '. . . applies to any lineup, to any other techniques employed to produce an identification and a fortiori to a face-to-face encounter between the witness and the suspect alone, regardless of when the identification occurs, in time or place . . . .' " *Rivers v. United States* (5th Cir. 1968), 400 Fed. 2d 935, 939.

The Circuit Court of Appeals for the District of Columbia was faced with the same issue a year later in *Russell v. United States* (D. C. Cir. 1969), 408 Fed. 2d 1280, certiorari denied, 395 U. S. 928, 89 Sup. Ct. 1786, 23 L. Ed. 2d 245. The court in *Russell* held that the *Wade-*

[1] *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149; and *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178.

*Gilbert* rule is inapplicable to confrontations like the one in this case. In *Wade, supra,* the court said, at page 237:

". . . No substantial countervailing policy considerations have been advanced against the requirement of the presence of counsel. . . ."

The court in *Russell* answered that noting that the sooner the confrontation was had, the more reliable the identification, or failure thereof, would be. Therefore, delaying the confrontation until counsel could be obtained would diminish the *reliability* of the identification, thereby defeating the principal purpose of having counsel present in the first place. The court in *Russell* concluded, at page 1284, that:

". . . This probability, together with the desirability of expeditious release of innocent suspects, presents 'substantial countervailing policy considerations' . . . ."

The Wisconsin court commented on this issue during its last term (August Term, 1969), in *Johnson v. State* (1970), 47 Wis. 2d 13, 176 N. W. 2d 332. In that case Mr. Justice CONNOR T. HANSEN noted first that *Wade-Gilbert* was inapplicable because the identification in *Johnson* occurred prior to the effective date of the rule. Nevertheless, he noted that the suggestiveness of such confrontations was outweighed by the two policy factors set forth in *Russell,* to wit: (1) Reliability because of nearness in time; and (2) expeditious release of the innocent.

The same conclusion was reached by the first appellate court to face the problem after *Wade-Gilbert. See: Commonwealth v. Bumpus* (1968), 354 Mass. 494, 238 N. E. 2d 343.

In concluding its opinion, the Wisconsin court in *Johnson, supra,* noted, at page 19, that:

". . . Until we have more guidance than at present about the scope of necessary application of these cases,

we shall regard them as not intended to apply to facts like those in the case at bar. . . ."

*See Bumpus, supra,* for similar language on "further guidance."

Since there now exists a conflict among the circuits on this issue (compare *Rivers* and *Russell, supra*), such guidance will no doubt be forthcoming very soon. Until then, however, we think the rule in *Johnson v. State, supra,* should prevail.

We believe that prompt identification, or lack of identification, promotes justice for victim and suspect. An immediate confrontation is inherently more reliable than a delayed one, while failure to identify terminates any inconvenience to the suspect.

In addition, Pipito contends that the circumstances of the identification were so unnecessarily suggestive as to make the identification untrustworthy and therefore inadmissible as competent evidence.

In this case the defendant was brought to the door of the patrol wagon, and he was wearing handcuffs when Mr. Swan was asked if he could identify him as the same man who emerged from the front door of the Theilacker house, wearing a red ski mask as he ran past the Swan residence. Mr. Swan said that it was the same man. When asked in court if he knew, at the time of the identification, whether or not the defendant was wearing handcuffs, Mr. Swan was not absolutely sure. He stated:

"I wasn't looking for that. All I wanted to do was to see his face."

As a general rule the reliability of an eyewitness identification, like the credibility of other parts of the prosecution's case, is a matter for the jury.[2] However,

---

[2] In *State v. Harris* (1968), 40 Wis. 2d 200, 206, 161 N. W. 2d 385, this court said:

" '. . . In any event, it would be within the province of the trier of the fact to determine what effect the display of a defendant's photograph to witnesses prior to their identification of him has on the weight and credibility of their subsequent identification. We

in *Foster v. California* (1969), 394 U. S. 440, 89 Sup. Ct. 1127, 22 L. Ed. 2d 402, the supreme court held that in some cases the procedures leading to an eyewitness identification may be so defective as to make the identification constitutionally inadmissible as a matter of law.

In *Foster,* the police put the accused in a three-man lineup. The accused was over six feet tall; the other two men were well under six feet. The witness said he could not be sure if the six-footer was the same man who had robbed him. He was then placed across the table from the accused in a private office so that he could hear his voice. He was still not sure. Ten days later, another lineup was had; the accused was the only man in this lineup who had also been in the previous one. This time the witness was "convinced" that Foster was the man.

The facts in this case are remote from *Foster.* In this case there was no initial hesitation. Mr. Swan was unequivocal in his identification. There was no attempt by the police to coax, convince and persuade Mr. Swan that Pipito was the man. He was sure of it without persuasion. Therefore, if Mr. Swan was telling the truth when he indicated he was not influenced by the handcuffs, then his identification was competent evidence. Whether or not he was truthful in that regard is a matter of credibility and for the jury to decide. This identification was not "constitutionally inadmissible as a matter of law" and therefore does not fall within the scope of *Foster, supra.*

10. *Was the defendant Pipito properly bound over for trial after his preliminary hearing?*

Counsel for Pipito contends that the preliminary hearing was insufficient as regards Pipito because the

---

find nothing in the testimony with respect to pictures of Brown that would render the witnesses' positive identification incredible as a matter of law, or insufficient to convince beyond a reasonable doubt.' *Accord, State v. Clarke* (1967), 36 Wis. 2d 263, 153 N. W. 2d 61." *See also: Brown v. State* (1965), 28 Wis. 2d 383, 388, 137 N. W. 2d 53.

testimony of Mr. Swan was based on an unlawful confrontation and because of an unlawful arrest.

We find no merit to these contentions. We conclude that the testimony of Mr. Swan at the preliminary hearing, coupled with the other testimony, was clearly sufficient to bind the defendant over for trial.

11. *Was the denial of Pipito's request to file a notice of alibi an abuse of the trial court's discretion?*

Sec. 955.07, Stats., provides:

"In courts of record, if the defendant intends to rely upon an alibi as a defense, he shall give to the district attorney written notice thereof on the day of arraignment, stating particularly the place where he claims to have been when the crime is alleged to have been committed together with the names and addresses of witnesses to his alibi, if known to the defendant. *In default of such notice, evidence of the alibi shall not be received unless the court, for good cause shown, shall otherwise order.*" (Emphasis supplied.)

The purpose of this rule is to prevent the sudden "popping up" of witnesses to prove that the defendant was not at the scene of the crime at the time of its commission. *State v. Kopacka* (1952), 261 Wis. 70, 75, 51 N. W. 2d 495; *Gray v. State* (1968), 40 Wis. 2d 379, 384, 161 N. W. 2d 892. In the absence of written notice of intent to submit alibi testimony, such testimony is inadmissible, unless the trial court, in its discretion, finds that "good cause" has been shown which explains the failure to comply with the statute. In this case the trial court heard the reasons for failure to comply with sec. 955.07, Stats., and he deemed them insufficient. The trial in this case had already started once with the defendant making no claim of alibi. It was not until after the mistrial had been declared and the new trial was about to begin that this alibi witness "popped up." The record indicates no abuse of discretion on this ruling. *Jensen v. State* (1967), 36 Wis. 2d 598, 153 N. W. 2d 566, 154 N. W. 2d 769.

12. *Was any identification made of defendant DiMaggio in violation of his constitutional rights?*

In *Wade-Gilbert, supra,* it was held that a lineup is a "critical stage" of the criminal conviction process and that a defendant is therefore entitled to have counsel present at that stage. Absent such counsel identification at the lineup is not admissible evidence and in-court identifications are likewise inadmissible unless it can be shown that they are untainted by the lineup identification. In *Wright v. State* (1970), 46 Wis. 2d 75, 80, 175 N. W. 2d 646, this court stated:

". . . When an objection is made to an in-court identification allegedly based on a lineup claimed to be defective, the holding of such *Goodchild*-type hearing greatly aids a reviewing court in considering the issues raised and findings made." [3]

In this case such a hearing was held, and the court concluded that DiMaggio was not represented by counsel at the time of the lineup. The district attorney then acknowledged that thereupon the burden had shifted to the state to show that any in-court identification of DiMaggio was untainted by the lineup.

In this case the district attorney asked Mr. Swan if he could identify Mr. DiMaggio as one of the men who the police had in custody shortly after the crime. Swan said he could. Swan was not asked, and he did not say that he could identify DiMaggio as a participant in the crime. The district attorney then asked Swan if he made any observation about the clothing of DiMaggio while he was in custody outside the Theilacker house. Swan said, "It was similar to what I had seen on the man attacking someone in the garage of the Theilacker home."

On cross-examination, counsel for DiMaggio asked questions which made it very clear that Swan could not

[3] *See State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 264, 133 N. W. 2d 753; *Roney v. State* (1969), 44 Wis. 2d 522, 171 N. W. 2d 400.

identify DiMaggio in any way, except by the similarity of his clothing. This observation by Swan was not made in the form of a confrontation. He merely observed DiMaggio and his appearance as he stood outside the home. There is no connection between this and the lineup. Moreover, Swan was perfectly truthful about how certain he was. He never purported to make an unequivocal identification of DiMaggio as a participant in the event; he merely stated that the defendant's clothing was "similar" to that worn by one of Mr. Theilacker's assailants. Under these facts the *Wade-Gilbert* rule is inapplicable and the absence of counsel at DiMaggio's lineup was in no way prejudicial to him.

At this point it should be noted that the evidence against DiMaggio is largely circumstantial, since no eyewitness could place him within the crime itself. However, circumstantial evidence can be as forceful as eyewitness testimony and can form the basis for a conviction. *State v. Davidson* (1969), 44 Wis. 2d 177, 170 N. W. 2d 755. Moreover, while each element of a crime must be proven beyond a reasonable doubt, each such element may be proven beyond a reasonable doubt by circumstantial evidence *alone*. *Bethards v. State* (1970), 45 Wis. 2d 606, 173 N. W. 2d 634; *State v. Wilson* (1968), 41 Wis. 2d 29, 162 N. W. 2d 605. *See also: State v. Dombrowski* (1969), 44 Wis. 2d 486, 171 N. W. 2d 349; and *State v. Kitowski* (1969), 44 Wis. 2d 259, 170 N. W. 2d 703.

We are satisfied that the defendants received a fair trial and that justice was done in these cases. None of the arguments of defendants has sufficient merit to warrant a new trial, much less the relief defendants seek of reversal and discharge; and, therefore, their convictions must be affirmed.

*By the Court.*—Judgments and orders affirmed.