## PEOPLE v. BARKER

### Opinion of the Court

1. Indictment and Information—Witnesses—Indorsement—Duty of Prosecution.

    Indorsement of the name of a witness on the information, either voluntary or under order, creates a duty in the prosecution to produce such witnesses at trial which may not be shifted to the defendant; a criminal defendant may rely on the prosecutor to produce properly indorsed *res gestae* witnesses and the trial court's implied assertion that defendant, charged with possession of marijuana, should have found and produced the witnesses in question, who had already been properly indorsed, because he had not been in custody between his arrest and trial, was erroneous (MCLA § 335.153).

2. Criminal Law—Witnesses—Production—Due Diligence.

    A showing of due diligence in attempting to produce a witness indorsed on the information by the prosecution will excuse the prosecutor from production of the witness at trial.

3. Criminal Law—Witnesses—Production—Due Diligence.

    Prosecution's failure to produce defendant's nephews, who were properly indorsed *res gestae* witnesses at defendant's trial for possession of marijuana is not excusable nor is due diligence shown where the defendant's nephews, who were arrested in his car shortly before marijuana was found in the car, were not questioned about the marijuana and no attempt was made to locate them for over a year and a half after defendant's arrest, and the attempt, when finally made, failed to produce the witnesses because of the obsolete addresses relied on by police and where no further effort to locate these witnesses has been made (MCLA § 335.153).

---

References for Points in Headnotes

[1–4] 21 Am Jur 2d, Criminal Law § 328.
    41 Am Jur 2d, Indictments and Informations §§ 56, 60.
[5] 29 Am Jur 2d, Evidence § 412.

4. CRIMINAL LAW—WITNESSES—PRODUCTION—RETRIAL—DUE DILI-
GENCE—PRESUMPTIONS...

> Prosecution's failure to use due diligence to produce properly
> indorsed *res gestae* witnesses for a criminal trial constitutes
> reversible error and, if, upon retrial, the prosecution still does
> not produce these witnesses and no showing of due diligence
> is made, the trial court may properly consider that the testi-
> mony of such witnesses would have been adverse to the people's
> case.

CONCURRING OPINION

LEVIN, J.

5. CONSTITUTIONAL LAW—SEARCH AND SEIZURE—EVIDENCE—ADMIS-
SIBILITY.

> *Provisions of the State Constitution which allow any narcotic*
> *drug, firearm, bomb, explosive or dangerous weapon, seized*
> *by a police officer outside the curtilage of any dwelling house*
> *in the state to be admitted as evidence in criminal proceedings,*
> *regardless of the validity of the search and seizure which*
> *produced such evidence, is violative of the exclusionary rule*
> *handed down by the United States Supreme Court, which*
> *is that illegally seized evidence is inadmissible at trial; this*
> *exclusionary rule binds all judges in all states notwithstanding*
> *anything in any state law or constitution to the contrary*
> *through the supremacy clause and the Fourteenth Amend-*
> *ment. (US Const, art 6, § 2; Mich Const 1963, art 1, § 11).*

Appeal from Wayne, Benjamin D. Burdick, J.
Submitted Division 1 June 12, 1969, at Detroit.
(Docket No. 6,167.) Decided July 31, 1969. Appli-
cation for leave to appeal filed October 3, 1969.

Daniel Barker was convicted of possession of
marijuana. Defendant appeals. Reversed and
remanded.

*Frank J. Kelley,* Attorney General, *Robert A.*
*Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Samuel J. Torina,* Chief Ap-

pellate Lawyer, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Arthur I. Gould,* for defendant on appeal.

Before: FITZGERALD, P. J., and LEVIN and T. M. BURNS, JJ.

T. M. BURNS, J. This is an appeal from the Wayne County Circuit Court wherein the trial judge, sitting without a jury, convicted defendant of possession of marijuana, MCLA § 335.153 (Stat Ann 1969 Cum Supp, § 18.1123), and sentenced him to serve four to ten years in prison.

The record shows that on July 23, 1966, the defendant voluntarily followed his two nephews to Redford Township Police Headquarters where the boys were questioned about an alleged attempt to commit larceny at the Gay Drugstore in Redford. From the record on appeal, it appears that when the defendant's nephews were arrested they were in defendant's car and that he followed the police immediately to the station. Further, it appears that he parked his car in front of the police station and went inside to wait for his nephews. While he was waiting, the Redford police called the Detroit police and discovered that defendant had several outstanding traffic warrants. Defendant was placed under arrest to be held for the Detroit police.

At trial, Detective Sergeant Johnson testified that he "inventoried" defendant's car, while defendant was awaiting removal to Detroit, without defendant's permission. This "inventory", which was in reality a thorough search, produced two cigarettes believed to be marijuana and some little particles thought to be marijuana seeds. These were

subsequently analyzed and were found to be *cannabis sativa* or marijuana.

Defendant filed a timely motion to quash the information and suppress the evidence, and this motion was denied by the Honorable Carl M. Weideman on June 28, 1968. Defendant waived his right to a jury trial and was found guilty by Judge Burdick. Defendant appeals from this decision.

The defendant on appeal objects to the failure of the people to produce *res gestae* witnesses as required. MCLA § 767.40 (Stat Ann 1969 Cum Supp § 28.980); *People* v. *Kayne* (1934), 268 Mich 186.* The people claim that they made a diligent effort to insure the presence of these witnesses and the trial court agreed. We do not.

Although the defendant and his nephews were arrested on the same day in July of 1966, and all the police officers who might incriminate the defendant were indorsed on the original complaint, it was not until a motion was made by defendant in January of 1968, that the people asked the court to indorse these possibly very important *res gestae* witnesses.

The record shows that the police made no attempt to question the two boys who were arrested while in defendant's car about the marijuana, nor did they make any effort to find these witnesses for over a year and a half after the arrest of the defendant or to preserve their testimony. When they finally did make an attempt to subpoena the witnesses for trial the police relied on the addresses given to them at the time of arrest and assert that they sought to serve these witnesses only to find that

---

* Among the *res gestae* witnesses which the people failed to produce at trial was the partner of the arresting officer. This officer was not indorsed, however, and defendant failed to make a timely objection. In fact, defense counsel specifically waived the production of this witness. Compare *People* v. *Tiner* (1969), 17 Mich App 18.

they had moved some months before. No further attempt was made to locate these witnesses. Compare *People* v. *O'Dell* (1968), 10 Mich App 87.

The indorsement of the name of a witness on the information either voluntarily or under order, as in this case, creates a duty in the prosecution to produce such witness at the trial, and the defendant may rely upon the prosecutor to fulfill the obligation. *People* v. *Lummis* (1932), 260 Mich 170, *People* v. *Ivy* (1968), 11 Mich App 427, 430.

The trial court here improperly attempted to shift the responsibility for the production of these witnesses on to the defendant by its implied assertion that since defendant had not been in custody the entire time between arrest and trial he should have found them and produced them.

Although certainly a showing of due diligence in attempting to produce a witness will excuse the prosecutor from production, *People* v. *Ivy, supra, People* v. *Kern* (1967), 6 Mich App 406, we cannot help but find that the trial court erred in its finding that there was due diligence under the facts of this case. See also *People* v. *Tiner* (1969), 17 Mich App 18.

This case seems to us to be paradigmatic of the command set down in *People* v. *Kayne, supra,* p 194 under which,

"the state is required to indorse and call the witness or witnesses whose testimony is necessary to protect the accused from being the victim of a false accusation."

Therefore, we must reverse the conviction and remand for a new trial. At the retrial, if the people again fail to produce these *res gestae* witnesses and a showing of due diligence is not made, we think it would be proper under *People* v. *Ivy, supra,* for the

court to consider that the testimony of such witnesses would be adverse to the people's case.

Reversed and remanded.

Fitzgerald, J., concurred.

Levin, J. (*concurring*). I concur in Judge Burns' opinion reversing defendant's conviction and granting him a new trial. I write separately because I think we are also obligated to consider and decide the defendant's claim that the trial court[1] erred when it denied his motion to suppress the marijuana seized in his automobile.

At the new trial, the admissibility of the marijuana is a question which is bound to arise again. Accordingly, we should now decide that question.[2] If the marijuana is inadmissible, then the defendant, who has already spent over a year in jail, is entitled to have that evidence excluded at his new trial. He should not be required possibly to spend still another year or so in jail before we reach and decide this meritorious question.[3]

The Constitutions of the United States and of this state prohibit violation of the right of the people to be secure against "unreasonable" searches and seizures. US Const, Am 4, and Const 1963, art 1, § 11. The people's brief makes no claim that the search and seizure of the marijuana was "reasonable". At the outset of the people's oral argument in our Court, the assistant prosecuting attorney

---

[1] The defendant's motion to suppress was heard and denied by a different circuit judge than the one who tried the case.

[2] See *Hill v. Harbor Steel & Supply Corporation* (1965), 374 Mich 194, 206, per Souris, J., three justices concurring; *People v. Lane* (1942), 304 Mich 29, 34, 35; *State v. McCreary* (SD, 1966), 142 NW2d 240, 246; *Clifton v. United States* (CA 5, 1965), 341 F2d 649, 651; *Rivers v. United States* (CA 5, 1968), 400 F2d 935, 942.

[3] If the marijuana evidence is excluded, the defendant is more likely to be acquitted at the new trial; indeed, without this evidence, there may be insufficient evidence to convict him.

conceded that the search and seizure was unreasonable. The people, nevertheless, defend the search and seizure of the marijuana claiming that while it was obtained as the result of an unreasonable search and seizure, it is admissible because of the proviso in the Michigan constitution which excepts narcotics and certain dangerous weapons seized outside the curtilage of a dwelling[4] from the rule of law (the so-called "exclusionary rule") which makes illegally seized evidence inadmissible at trial.

However, in *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933), the United States Supreme Court declared that the exclusionary rule, devised to implement the Fourth Amendment's prohibition of unreasonable searches

---

[4] The provision which made admissible any firearm, etc. or other dangerous weapon seized outside the curtilage of a dwelling house without regard to whether a warrant was obtained or the reasonableness of the search was adopted in 1936 (proposed as JR 2, PA 1935, p 468, and first adopted at the general election in 1936, PA 1937, p 876). The amendment adding narcotic drugs to the list was first adopted in 1952 (proposed as JR 1, PA 1952, p 479 and adopted at the general election in 1952, PA 1953, p 438).

In the 1961 Michigan Constitutional Convention there was extended consideration and much difference of opinion among the delegates concerning the retention of the 1936 and 1952 amendments. Those delegates who desired their retention ultimately prevailed. See Official Record, Constitutional Convention 1961, pp 467, 489, 493, 496, 497, 507, 508, 511 and 514 of Vol 1, and pp 2859, 2860, 2885, 2924, 3094, 3095, 3098 and 3255 of Vol 2.

The address to the people states that the 1963 provision makes no change in the 1908 provision (Const 1908, art 2, § 10) "except for improvement in phraseology."

The presently applicable Michigan constitutional provision reads:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. *The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state.*" [Emphasis supplied.] Const 1963, art 1, § 11.

The first two sentences of the 1963 constitutional provision paraphrase the Fourth Amendment. The third sentence is a rewording of the amendments adopted by the people in 1936 and 1952 that modified the pertinent provision of the 1908 constitution.

and seizures, applies to the states through the Fourteenth Amendment.[5]  This means that, as to both state and federal trials, the Fourth Amendment and the exclusionary rule are "the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding." US Const, art 6, § 2.

The people's argument in this case, in essence, is that, despite the just-quoted supremacy clause, Michigan is free to modify the governing federal constitutional guarantee.

It has been suggested that support for this novel proposition can be found in certain language used by the United States Supreme Court in *Ker* v. *California* (1963), 374 US 23 (83 S Ct 1623, 10 L Ed 2d 726).[6]  However, the pertinent portion of the *Ker*

[5] In *Wolf* v *Colorado* (1949), 338 US 25, 27 (69 S Ct 1359, 93 L Ed 1782), the United States Supreme Court declared that the "security of one's privacy against arbitrary intrusion by the police—which is the core of the Fourth Amendment—is basic to a free society * * * and as such enforceable against the states through the Due Process Clause," but refused to apply to the states the exclusionary rule previously fashioned for federal prosecutions in *Weeks* v. *United States* (1914), 232 US 383 (34 S Ct 341, 58 L Ed 652, LRA1915B 834, Ann Cas 1915C 1177).  In the post-*Weeks*, pre-*Wolf* case of *People* v. *Marxhausen* (1919), 204 Mich 559, the Michigan Supreme Court adopted the exclusionary rule.

[6] In *Ker*, the Court stated that (*supra*, p 31) "*Mapp* sounded no death knell for our federalism" and that (p 34) "The states are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the states." But these statements were qualified by other statements in the same opinion.  The Court stated that both federal and state authorities have a (p 31) "mutual obligation to respect *the same fundamental criteria* in their approaches" and that (p 33) "the standard of reasonableness is the same under the Fourth and Fourteenth Amendments" (emphasis in original), and that the right of the states to develop workable rules governing arrests, searches and seizures is subject to the limitation that the rules so developed (p 34) "do not violate the constitutional proscription of unreasonable searches and seizures *and the concomitant command that evidence so seized is inadmissible against one who has standing to complain.*" (Emphasis supplied.)

opinion concluded with the observations that the Court did not intend to imply any (p 34) "derogation of uniformity in applying federal constitutional guarantees" and that it was deciding the case in the application of the "federal constitutional standard."

Any doubt that there is but one applicable standard, namely, the federal standard, was dispelled by *Malloy* v. *Hogan* (1964), 378 US 1 (84 S Ct 1489, 12 L Ed 2d 653). In that case the United States Supreme Court observed that it had held that the guarantees of the First Amendment, the prohibition of unreasonable searches and seizures of the Fourth Amendment (citing *Ker* v. *California*) and the right to counsel guaranteed by the Sixth Amendment (p 10) "are all to be enforced against the states under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment. * * * The Court thus has rejected the notion that the Fourteenth Amendment applies to the states only a 'watered-down, subjective version of the individual guarantees of the Bill of Rights'." Similarly, see *Aguilar* v. *Texas* (1964), 378 US 108, 110 (84 S Ct 1509, 1512, 12 L Ed 2d 723); *People* v. *Wolfe* (1967), 5 Mich App 543, 550; *People* v. *McDonald* (1968), 13 Mich App 226.

. Nor is there any room for a distinction based on the facts that the articles seized in *Mapp* were not as deadly as can be narcotics or weapons and the seizure in *Mapp* occurred in the accused person's home. The United States Supreme Court has recognized the applicability of *Mapp* in a case where it was alleged that a search and seizure of narcotics outside the curtilage of a home was unreasonable. See *McCray* v. *Illinois* (1967), 386 US 300, 301, 315 (87 S Ct 1056, 18 L Ed 2d 62), *reh den* 386 US 1042 (87 S Ct 1474, 18 L Ed 2d 616), where, although the search was held reasonable, both the majority and dissenting opinions cited *Mapp* as governing authority. Similarly, see *Cooper* v. *California* (1967), 386 US 58 (87 S Ct 788, 17 L Ed 2d 730), *rehearing and modification denied* 386 US 988 (87 S Ct 1283, 18 L Ed 2d 243), where the Federal standard was applied in holding that the search of an automobile was reasonable.

Also relevant in our consideration of the constitutionality of the Michigan proviso making a distinction between searches within and outside the curtilage of a dwelling is the shift in emphasis in the application of the constitutional right to be protected against warrantless, unreasonable searches from the protection of places to the protection of individual privacy.[7]

"We have recognized that the principal object of the Fourth Amendment is the protection of privacy rather than property, and have increasingly discarded fictional and procedural barriers rested on property concepts." *Warden, Maryland Penitentiary* v. *Hayden* (1967), 387 US 294, 304 (87 S Ct 1642, 18 L Ed 2d 782).

I know of no case holding that *Mapp* does not govern in all 50 states or which allows Michigan to exempt itself from *Mapp*[8]—no case that is except some decisions of our Court which, with respect for my colleagues, I do not think we should continue to follow.

In the post-*Mapp* case of *People* v. *Monroe* (1966), 3 Mich App 165, 168,[9] a panel of our Court

[7] *Katz* v. *United States* (1967), 389 US 347 (88 S Ct 507, 19 L Ed 2d 576); *People* v. *Zeigler* (1960), 358 Mich 355, 363, 365.

[8] It appears that Michigan and South Dakota are the only states which have had constitutional or statutory provisions modifying the exclusionary rule. See Table II, Appendix to *Elkins* v. *United States* (1960), 364 US 206, 226 (80 S Ct 1437, 1449, 4 L Ed 2d 1669, 1683). The South Dakota Supreme Court held its statute partially constitutional and partially unconstitutional in the pre-*Mapp* case of *State* v. *Lane* (1957), 76 SD 544 (82 NW2d 286). In the post-*Mapp* case of *State* v. *McCreary* (SD, 1966), 142 NW2d 240, 247, the South Dakota Supreme Court held its statute totally unconstitutional.

Commentators have concluded that the Michigan exception to the exclusionary rules violates the Federal constitution as interpreted in *Mapp*. Nord, The Michigan Constitution of 1963, 10 Wayne L Rev 309 (1963, 1964); Wise, 1966 Annual Survey of Michigan Law, 13 Wayne L Rev 114, 135, 136; Quick, 1961 Annual Survey of Michigan Law, 8 Wayne L Rev 77, 82.

[9] In *Monroe* the search and seizure occurred in 1963, 2 years after *Mapp* was decided.

stated that the Michigan constitutional provision
"as interpreted by *People* v. *Winkle* (1960), 358
Mich 551 [made] it * * * unnecessary to decide
whether the search was reasonable or unreason-
able."

Later, in *People* v. *Vanlandingham* (1967), 6 Mich
App 128, another panel of our Court adopted the
holding of *People* v. *Monroe* and went on to say that
the *Monroe* Court cited the pre-*Mapp*, 1960 *Winkle*
case reported at 358 Mich 551 instead of the post-
*Mapp* 1964 *Winkle* case of *In re Winkle* (1964),
372 Mich 292, *cert. den.* 379 US 645 (85 S Ct 611,
12 L Ed 2d 551), *reh. den.* 380 US 967 (85 S Ct
1102, 14 L Ed 2d 157), because the second *Winkle*
case was decided without an opinion signed by a
majority of the Michigan Supreme Court. The
*Vanlandingham* Court further observed that, al-
though the second *Winkle* case was decided by the
Michigan Supreme Court after *Mapp* was decided
by the United States Supreme Court, certiorari had
been refused by the United States Supreme Court
to review the second *Winkle* case.[10]

*People* v. *Dillon* (1967), 7 Mich App 256, without
recitation of the facts, stated that *People* v. *Monroe*
required affirmance of Dillon's conviction and (p
257) "obviates discussion" of the lawfulness of his
arrest.[11]

---

[10] The fact that there was no majority opinion (and thus no
precedential opinion) in the second *Winkle* case explains the failure
of the United State Supreme Court to grant certiorari and is a reason
for reexamining *Monroe,* not a reason for following it.

[11] In *People* v. *Henderson* (1967), 6 Mich App 379, 384, still another
panel of our Court referred to the 2 *Winkle* opinions and also stated
that *Mapp* v. *Ohio, supra,* had not changed the special treatment of
automobiles under the search and seizure provision of the Federal
constitution. Clearly, as stated by the United State Supreme Court
in *Dyke* v. *Taylor Implement Mfg. Co.* (1968), 391 US 221 (88
S Ct 1472, 20 L Ed 2d 538), in the application of the standard of
reasonableness "automobiles, because of their mobility, may be
searched without a warrant upon facts not justifying a warrantless
search of a residence or office." Similarly, see *Cooper* v. *California,*

Since *Monroe* is based upon the first *Winkle* case, decided before *Mapp,* it is not persuasive. While the first *Winkle* case upheld the validity of the proviso to the Michigan constitutional provision, manifestly that case, decided before *Mapp* was decided, is not authority for the constitutionality of the proviso after *Mapp.*

The question of whether *Mapp* supersedes the Michigan proviso has been presented to the Michigan Supreme Court in a number of cases but has never been decided by a majority of the Court.

In *People* v. *Harper* (1962), 365 Mich 494, which was decided after the first *Winkle* case, a unanimous Court found that the search of Harper's automobile was reasonable and stated that (p 502) "having reached the conclusion we have, the effect of *Mapp* on section 10 of article 2 of our constitution will have to be left for determination in another case at another time."

In the second *Winkle* case there were three separate opinions. Justice KELLY, in an opinion in which Justice O'HARA joined, ruled that the search was reasonable, that *Mapp* does not apply retrospectively[12] and that *Mapp* does not supersede the Michigan proviso. Justice DETHMERS, in one opin-

---

*supra.* But, in the case now before us, no question of reasonableness is presented; the people have conceded that the search here was unreasonable.

In *People* v. *Dombrowski* (1968), 10 Mich App 445, and *People* v. *Johnnie Mae Jones* (1968), 12 Mich App 369, 379, the items seized were not of the kind covered by the Michigan proviso. In *Dombrowski* the seized items were grocery bags; in *Johnnie Mae Jones* it was a crowbar. On that ground, *Dombrowski* distinguished *Monroe* and held it inapplicable. In both *Dombrowski* (p 449) and *Johnnie Mae Jones* (p 379) the Court stated that a warrant is ordinarily required before a valid search can be made unless the articles are of a kind admissible without a warrant. This allusion to the Michigan proviso was unnecessary to decision in either case and, hence, dictum. In neither case did the Court rely on *Monroe* or discuss the issue dealt with in this opinion.

[12] So held in *Linkletter* v. *Walker* (1965), 381 US 618 (85 S Ct 1731, 14 L Ed 2d 601).

ion, and Justice Souris, in an opinion in which Justices Kavanagh and Smith joined, held that the search was reasonable and that there was no need to consider the questions of retrospectivity or continued viability of the proviso. Justice Black concurred in the result and Justice Adams did not participate in the decision.

In *People* v. *Blessing* (1966), 378 Mich 51, *cert. den.* (1967) 387 US 914 (87 S Ct 1692, 18 L Ed 2d 637), again there were several opinions. Justice Kelly, in an opinion in which Justice O'Hara joined, again found both that the search was reasonable and that *Mapp* did not supersede the Michigan proviso. Justice Adams, in an opinion also signed by Justices Dethmers and Smith, ruled that the search was reasonable and did not advert to the question of the continued federal constitutionality of the Michigan proviso. Justice Souris dissented in an opinion joined by Justice Kavanagh, stating that the search was unreasonable and that, since decision in *Mapp* v. *Ohio*, the Michigan proviso was no longer constitutional.

The Souris opinion in *Blessing* placed reliance on *People* v. *Lee* (1963), 371 Mich 563, where a unanimous Michigan Supreme Court held inadmissible narcotics seized in an automobile. In *Lee*, the issue of the post-*Mapp* constitutionality of the proviso was argued in the briefs, but the opinion of the Court made no reference to the proviso, nor did it discuss the effect of *Mapp*. This caused Justice O'Hara, the author of the *Lee* opinion, to file a separate opinion in *Blessing* (p 68) confessing error in *Lee*. Justice Black concurred in the affirmance of Blessing's conviction stating that the "time had come" to join with Justice Kelly in holding the Michigan proviso constitutional. He observed that the United States Supreme Court had

had several opportunities to strike down the proviso
but had not done so.

It is apparent from the foregoing history that
a majority of the Michigan Supreme Court has not
yet been mustered to declare whether *Mapp* does
or does not supersede the proviso. Thus, there is
no controlling opinion of the Michigan Supreme
Court. The opinions of our Court are all based
on *People* v. *Monroe* which, in turn, was predicated
on the pre-*Mapp* case of *People* v. *Winkle, supra.*

The failure of the United States Supreme Court
to decide the question by review of the *Winkle* and
*Blessing* cases is perfectly understandable. Winkle
did not seek direct review by certiorari of the first
*Winkle* case. His subsequent application for *habeas
corpus* relief was denied by the Michigan Supreme
Court on April 26, 1961. The United States Su-
preme Court granted certiorari to review that de-
nial. After *Mapp* was decided, the judgment of the
Michigan Supreme Court denying Winkle *habeas
corpus* relief was vacated by the United States
Supreme Court "and, as suggested by the attorney
general of Michigan," the case was remanded for
reconsideration in the light of *Mapp*.[13] This led to
the second *Winkle* case of *In re Winkle, supra.*
Since the second *Winkle* case (*In re Winkle*)[14] and
*Blessing* were both decided by the Michigan Su-
preme Court on the ground that the search was
reasonable, which made it unnecessary to consider
whether *Mapp* superseded the proviso, it is entirely
understandable that the United States Supreme
Court declined to grant certiorari to review those
decisions.

---

[13] *Winkle* v. *Bannan* (1961), 368 US 34 (82 S Ct 146, 7 L Ed 2d
91).

[14] Moreover, under *Linkletter* (see fn 12), which had been argued
before rehearing was denied in the second *Winkle* case, *Winkle* was
not entitled to relief because his conviction had become final before
*Mapp* was decided.

Furthermore, it is axiomatic that the denial of leave to appeal or certiorari imports no expression of opinion upon the merits of the case. See *Frishett* v. *State Farm Mutual Automobile Insurance Company* (1967), 378 Mich 733, which adopted the views of Justice Holmes as stated in *United States* v. *Carver* (1923), 260 US 482, 490 (43 S Ct 181, 67 L Ed 364).

The concept that Michigan is free to enact, whether in its constitution, or in some other form, an exception to the federal exclusionary rule made applicable by *Mapp* to all 50 states in the union, is palpably erroneous and clearly wrong. It is our duty to deny it further credence and we should unhesitatingly say so. It is unseemly that Michigan litigants find it necessary to seek the protection of the federal courts for vindication of rights enjoyed without question by all in the other 49 states.[15] I would hold, on the authority of *Mapp* v. *Ohio,* that the proviso to the Michigan constitution violates the Federal Constitution.

---

[15] In *Winkle* v. *Kropp* (ED Mich 1968), 279 F Supp 532, reversed on other grounds (CA 6, 1968), 403 F2d 661, the court held that the Michigan exception is violative of the Fourth Amendment. Similarly see *Lucas* v. *State of Michigan* (ED Mich #31412 [not officially reported]), currently on appeal to the United States Court of Appeals for the Sixth Circuit.