## PEOPLE *v.* NOBLE

1. WITNESSES—RES GESTAE WITNESSES—INDICTMENT AND INFORMATION—INDORSEMENT—PRODUCTION OF WITNESSES—DUTY OF PROSECUTION—EXCUSE.

   Although a prosecutor is obligated to produce any witness for trial whose name is indorsed on the information either voluntarily or under order and a defendant may rely upon the prosecutor to fulfill his obligation, nevertheless a prosecutor may be excused from producing an indorsed witness if he shows due diligence in attempting to produce the witness.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 21 Am Jur 2d, Criminal Law §§ 328, 333.
[4, 5] 21 Am Jur 2d, Criminal Law §§ 368, 369.
29 Am Jur 2d, Evidence §§ 367, 371, 372.
[6] 53 Am Jur, Trial §§ 94, 144.

2. Witnesses — Indictment and Information — Indorsement — Production of Witness — Due Diligence — Discretion.

Determination of whether a prosecutor has exercised due diligence in attempting to produce an indorsed witness is within the discretion of the trial court whose findings will be overturned on appeal only for clear abuse.

3. Indictment and Information—Witnesses—Res Gestae Witnesses—Indorsement—Failure to Produce—Due Diligence.

Trial court's finding that the prosecutor had exercised due diligence in attempting to locate a *res gestae* witness indorsed on the information was not an abuse of discretion where a subpoena for that witness had been returned unanswered and the police after learning of that witness's move to another state not only wrote to him at his last known address in that state but also attempted to telephone him there, all without success.

4. Criminal Law—Pretrial Identification—Identification—Photographs.

Convictions based on eyewitness identification of defendant at trial, following a pretrial identification of him from photographs, will not be set aside unless the photographic identification procedure was so impermissibly suggestive as to create a very substantial likelihood of irreparable misidentification.

5. Criminal Law—Pretrial Identification—Photographs.

Photographic identification of defendant did not violate his right of due process where two eyewitnesses studied photographs from separate trays at a police station and agreed, after one witness had recognized defendant's photograph and pointed it out to the other witness, that defendant was the perpetrator of the armed robbery since that procedure was not so impermissibly suggestive as to create a very substantial likelihood of irreparable misidentification inasmuch as one of the witnesses, two and one-half months later, identified the defendant at a showup and again at trial (MCLA § 750.529).

6. Trial—Witnesses—Testimony.

Trial judge, as trier of fact, did not commit reversible error by stating that an eyewitness, who was not produced at defendant's trial for armed robbery, would have corroborated the testimony and identification of the other eyewitness who did not appear where the trial judge later stated that he would not consider the testimony of anyone not present at

the trial and that he would weigh the testimony of defendant's alibi witnesses against the complaining witness's uncorroborated testimony.

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted Division 1 January 12, 1970, at Detroit. (Docket No. 6,449.) Decided March 24, 1970. Leave to appeal denied August 26, 1970. 383 Mich 823.

Lorenzo Howard Noble was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Carl Levin* and *Arthur J. Tarnow* (Defenders' Office—Legal Aid and Defender Association of Detroit), for defendant on appeal.

Before: DANHOF, P. J., and FITZGERALD and McGREGOR, JJ.

McGREGOR, J. Defendant was tried and convicted of armed robbery,* in the Recorder's Court for the city of Detroit, from which he appeals.

Defendant was accused of robbing a gasoline station on June 21, 1967. Two employees, *res gestae* witnesses, were present at the time of the robbery and both had ample opportunity to view the gunman.

Shortly after the robbery, the two witnesses went to police headquarters to try to identify the gunman from photographs in police files. After an exten-

---

* MCLA § 750.529 (Stat Ann 1970 Cum Supp § 28.797).

sive search, one of the witnesses identified the defendant from one of the photographs. This initial identification was corroborated by the other witness. Two and one-half months later, at a showup, both witnesses identified the defendant as the gunman.

Although both witnesses had been indorsed on the information, only one testified at the trial. After a subpoena for the other had been returned unanswered, police learned that he had moved to Chicago. Several days before the trial, police wrote to him at his last known Chicago address, but no response was received. Efforts to phone such witness at the Chicago address were also unsuccessful.

The evidence presented at trial consisted of the complaining victim's identification and testimony. Defendant offered several alibi witnesses who testified that he had been at a party at the time of the crime.

Defendant contends that the prosecution's failure to produce an indorsed *res gestae* witness was reversible error. In *People* v. *Barker* (1969), 18 Mich App 544, 548, the Court said:

"The indorsement of the name of a witness on the information either voluntarily or under order, as in this case, creates a duty in the prosecution to produce such witness at the trial, and the defendant may rely upon the prosecutor to fulfill the obligation. *People* v. *Lummis* (1932), 260 Mich 170; *People* v. *Ivy* (1968), 11 Mich App 427, 430."

In *People* v. *Ivy* (1968), 11 Mich App 427, 430, leave to appeal denied 381 Mich 815, it was said:

"The prosecutor may nevertheless be excused from producing the witness (indorsed witness) if he shows due diligence in attempting to produce him."

In *People* v. *Tiner* (1969), 17 Mich App 18, 20, our Court stated:

"This question of diligence in production of indorsed witnesses is a matter within the discretion of the trial court, subject to being overturned on appeal only for clear abuse."

We find that there was sufficient testimony from which the trial court could conclude that the prosecution had exercised due diligence in attempting to produce this witness.

Defendant also contends that the photographic identification procedures employed in this case deprived him of a fair trial. The facts in brief are that, shortly after the robbery, the eyewitnesses were in the same room at police headquarters, examining different pictures. After one of the witnesses had viewed more than 100 pictures, he indicated that he had found the assailant's photograph; the other witness then examined the photograph and agreed that it was the gunman.

Defendant contends that the second witness identified the photograph only after it was selected by the first witness, thereby rendering the entire identification procedure "tainted." The witness who first found the picture of the defendant was unavailable at the trial.

The standard by which photographic identification procedures are to be judged is established by *Simmons* v. *United States* (1968), 390 US 377, 384 (88 S Ct 967; 19 L Ed 2d 1247, 1253):

"[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

misidentification.  This standard accords with our
resolution of a similar issue in *Stovall* v. *Denno,*
388 US 293, 301, 302, (87 S Ct 1967; 18 L Ed 2d
1199, 1206) and with decisions of other courts on
the question of identification by photograph."

The issue is whether the procedures used in this
case were "so impermissibly suggestive as to give
rise to a very substantial likelihood of irreparable
misidentification."

An examination of the procedures employed leads
us to conclude that defendant's rights of due process
were not violated.  The record reveals that the wit-
ness had ample opportunity to view the gunman
during the robbery.  Photographic identification
took place approximately five hours after the crime.
Although we do not countenance the practice of eye-
witnesses viewing photographs in the same room,
the record indicates that each witness was viewing
photographs from different trays; that, after the
first victim remarked that he had found the picture
of the robber, the second victim positively corrobo-
rated his statement by saying, "it sure is."  Two
and one-half months later, the witness identified the
defendant at a showup, and again at trial.  There
is no assertion that the police attempted to influ-
ence the witness's selection of the photograph.  Con-
sidering the circumstances in this case, we do not
find that the identification procedures posed a sub-
stantial likelihood of misidentification.

Defendant's final contention is that the trial judge,
sitting without a jury, improperly stated that the
other eyewitness, who was not produced at trial,
would have corroborated the testimony and iden-
tification of the witness who did appear.  The
trial judge later stated that he would not consider
the testimony of anyone not present at the trial:

"* * * but I must pass upon what I have heard and I can't pass upon that which I did not hear."

and also said, in considering the testimony of the defendant's alibi witnesses, and the weight to be accorded to it,

"* * * so I weigh that against [the complaining witness's] uncorroborated testimony."

We conclude that the trial judge did not commit reversible error in light of the overall record.

Affirmed.

All concurred.